UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   4:17 CR 189 RWS |
| ) | |
| ) | |
| U.S. TECHNOLOGY CORPORATION, ) | |
| MISSOURI GREEN MATERIALS, ) | |
| RAYMOND WILLIAMS, ) | |
| DARYL DUNCAN, and ) | |
| PENNY DUNCAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Dianna Collins and Hal Goldsmith Assistant United States Attorneys for said District and files its trial brief.

On April 26, 2017, a federal grand jury in the Eastern District of Missouri returned a two count indictment charging Defendants Raymond Williams, Daryl Duncan, and Penny Duncan with knowingly transporting hazardous waste to a facility which lacked a permit to treat, store, or dispose of hazardous waste, in violation of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d)(1) (Count 2), and defendants U.S. Technology Corporation (UST), Missouri Green Materials, LLC (MGM), Raymond Williams, Daryl Duncan, and Penny Duncan with conspiring to illegally transport hazardous waste in violation of 42 U.S.C. § 6928(d)(1), in

1

violation of 18 U.S.C. § 371 (Count 1).

Specifically, Count 2 charges that, "[f]rom on or about October 3, 2013, until on or about December 3, 2013, [the individual defendants] did knowingly transport, and cause to be transported, super sacks containing hazardous waste from Yazoo City, Mississippi to Missouri Green Material's facility located in Berger, Missouri [. . .], a facility which did not have a permit issued by the United States Environmental Protection Agency, or the State of Missouri, to treat, store, or dispose of such waste.

Count 1 charges that, "[o]n or about between October 30, 2013 and December 3, 2013, [the two corporate and three individual defendants] did knowingly and unlawfully combine, conspire, and agree to violate RCRA as to the knowing transportation of hazardous waste [. . .] in violation of Title 42, United States Code, Section 6928(d)(1) and Title 18, United States Code, Section 2."

I.     Overview of the Facts

The government expects its evidence at trial to demonstrate (among others) the following facts. At all times relevant to the charges in the indictment, defendant Raymond Williams was the president of defendant U.S. Technology Corporation, an Ohio corporation that leased blasting media to various customers for use in removal of paint and other materials. Customers of UST included United States military bases and agencies, which used the blasting materials to remove paint from things such as tanks and planes, resulting in the generation of a powder-like waste referred to as spent blasting media (SBM). This waste SBM was contaminated with, *inter alia,* heavy metals that had been used as pigments to color the paint, which included cadmium, chromium, and lead.

2

In 2003, UST hired Hydromex, a Mississippi-based recycling company, as a subcontractor to recycle hazardous waste from its SBM at its Yazoo City, Mississippi plant. However, Hydromex never recycled the hazardous waste and, in 2003, pursuant to an Agreed Order with the Mississippi Commission on Environmental Quality (MCEQ), Defendant UST, through defendant Raymond Williams, agreed to remove illegally stored and disposed hazardous waste from the Hydromex facility in Yazoo City, Mississippi. In February 2011, the Agreed Order with the MCEQ was amended, and pursuant to this 2011 Amendment, UST, through Raymond Williams, reaffirmed its agreement to remove the illegally stored and disposed hazardous waste from the Hydromex facility. The amended agreement provided that UST would clean up the hazardous waste within two years.

After defendants UST and Raymond Williams failed to comply with the terms of the February 2011 Amendment to Agreed Order, a Second Amendment to the Agreed Order was executed in June 2013, in which defendants UST and Raymond Williams agreed to clean up the hazardous waste in the Hydromex facility in Yazoo City before December 31, 2013. The Second Amendment to the Agreed Order provided, among other things, that UST would be allowed to utilize processed SBM waste as an intermediate road base as approved by the Mississippi Department of Transportation (MDOT), and provide clean closure of the site. Such use was conditioned on all the SBM meeting MDOT specifications and sampled so as not to exceed specified concentrations for the hazardous constituents of cadmium, chromium, and lead. All activities undertaken by UST at the site were to conform to the Second Amendment to the Agreed Order unless approved in writing by the Mississippi Department of Environmental Quality (MDEQ) on behalf of MCEQ.

3

In November, 2013, one month before the expiration of the Second Amendment to the Agreed Order, MDEQ received notification that UST had recovered all of the SBM waste out of the ground at the Yazoo City site and that, rather than utilize the waste in the manner allowed pursuant to the terms of the amended Order, it had started transporting the waste from the Yazoo City site to a facility located in Berger, Missouri operated by Defendant Missouri Green Materials, LLC (the MGM facility). On or about November 25, 2013, and subsequently memorialized in a letter dated December 3, 2013, MDEQ informed defendants Williams and UST that they were in violation of the amended Order and required them to immediately cease the transportation of the SBM waste from the Yazoo City site. Despite MDEQ's admonition, multiple shipments of waste SBM continued to be transported to the MGM facility on or after November 25, 2013 through at least on or about December 3, 2013.

Defendant MGM, an active Missouri Limited Liability Company, through defendants Penny Duncan and Daryl Duncan, respectively the owner and general manager of MGM, operated an approximately 200,000 square foot warehouse in Berger, Missouri. In or about October of 2013, defendant UST, through Raymond Williams, entered into an agreement with defendant MGM, through Daryl Duncan and Penny Duncan, to send hazardous waste SBM from the Yazoo City site to the MGM facility. Prior to MGM and UST entering into an agreement to transport the hazardous waste SBM, defendant Daryl Duncan caused the material from the Yazoo City site to be sampled and analyzed, and learned that the material tested high for cadmium at 7.53 mg/L, above the regulatory limit of 1.0 mg/L. The results of the analysis were provided to Daryl Duncan and shared with Raymond Williams. Between October 30, 2013 to December 3, 2013, MGM, which lacked a permit to treat, store, or dispose of hazardous waste,

4

received twenty shipments totaling approximately nine million pounds of hazardous waste SBM from the Yazoo City site. The nine million pounds from the Yazoo City site in 2013, coupled with waste SBM received from multiple other locations operated by UST and Williams in 2013-2014 resulted in a total of approximately thirteen million pounds in storage at the MGM facility.

Following notice from the MDEQ that materials may have been transported to the MGM facility, the Missouri Department of Natural Resources (MDNR) conducted a site visit at the MGM facility on December 6, 2013, followed by a compliance evaluation inspection on December 13, 2013. The MDNR inspection at the MGM facility documented approximately 1,400 55-gallon drums and 4,000 super sacks of waste SBM, many of which were open and had spilled onto the warehouse floor. On January 6, 2014, MDNR issued a Notice of Violation to MGM for the conditions noted during the December inspection, citing it for, among other things, operating a treatment, storage, or disposal facility of hazardous waste without first obtaining a facility permit, failing to maintain containers in good condition, and failing to operate and maintain the facility to minimize the possibility of an emergency.

In June of 2014, EPA executed a search warrant at the MGM facility. EPA's National Enforcement Investigations Center (NEIC) came to the MGM facility and collected samples of substances found in containers on the premises. Of the 56 samples taken, more than half exceeded regulatory limits for either or both the toxic metals cadmium or chromium.[1]

    II.       Legal Issues

    A.       Elements of the Charged Offenses

---

1 The regulatory limit for toxicity for cadmium is 1.0 mg/L, and for chromium is 5.0 mg/L.

1. <u>Conspiracy</u>

The statute at Title 18, Section 371 states:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

As set forth in the statute, a conspiracy is committed when two or more persons agree to commit an unlawful act, and at least one of the conspirators undertakes an "overt act" in furtherance of the group's goal. Since a conspiracy is a criminal offense, separate and distinct from the crime which the conspirators intend to commit, defendants can be convicted of both the conspiracy and the substantive criminal offense. *Callahan v. United States*, 364 U.S. 587 (1961). A person can be convicted of a conspiracy if he or she agreed to participate in the criminal scheme but did not know exactly how it would be carried out and did not directly participate in the "overt act" in furtherance of the conspiracy. *United States v. Gallishaw*, 482 F2d 760 (2nd Cir. 1970).

Under the first prong of the statute, to prove that the targets of this investigation participated in a conspiracy in violation of 18 U.S.C. § 371, it must be shown that there was an agreement between two or more persons to commit one or more of unlawful acts. Thus, the Government in the present matter must show the following elements beyond a reasonable doubt:

<u>First</u>, that two people reached an agreement to commit the crime of transporting or causing to be transported hazardous waste in violation of 42 U.S.C. § 6928(d)(1);

<u>Second</u>, that the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

6

Third, that at the time the defendant joined the agreement, the defendant knew the purpose of the agreement; and

Fourth, that while the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.[2]

"The agreement may be in the form of a tacit understanding rather than a formal, explicit agreement." *United States v. Whirlwind Soldier*, 499 F.3d 862, 869 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1286, 170 L. Ed. 2d 112 (2008). Moreover, the existence of an agreement "may be shown by circumstantial evidence, including the conduct of the conspirators and any attending circumstances, particularly circumstances indicating that the defendants 'acted in concert to achieve a common goal.'" *United States v. Pintar*, 630 F.2d 1270, 1275 (8th Cir. 1980) (quoting *Hamling v. United States*, 418 U.S. 87, 124, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974)). *See also United States v. Williams*, 534 F.3d 980, 985 (8th Cir. 2008) ("A formal agreement is not required to create a conspiracy, and the existence of a conspiracy can be proved by direct or circumstantial evidence."); and *United States v. Tensley*, 334 F.3d 790, 794 (8th Cir. 2003), *quoting United States v. Robinson*, 217 F.3d 560, 564 (8th Cir. 2000) ("often evidence in a conspiracy case will be circumstantial due to an illegal conspiracy's 'necessary aspect of secrecy'").

2. Transportation of Hazardous Waste to an Unpermitted Facility

Count 2 charged the Defendants with illegal transportation of hazardous waste in

---

[2] Elements of 18 U.S.C. § 371 conspiracy offense are from *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* Instruction 5.06A-I. (August 5, 2014)

7

violation of the RCRA, 42 U.S.C. § 6928(d)(1). In relevant part, Section 6928(d)(1) provides criminal penalties for "[a]ny person who knowingly transports or cause to be transported any hazardous waste [. . .] to a facility which does not have a permit."

Here, the government must prove five essential elements beyond a reasonable doubt to establish the offense charged in Count 2:

First, that the defendants knowingly transported or caused to be transported certain waste material during the timeframe alleged in Count 2 (from on or about October 30, 2013, until on or about December 3, 2013);

Second, that the waste material so transported was defined by law to be a hazardous waste, that is, in this matter, waste exhibiting the characteristic of toxicity;

Third, that the waste material was transported to a facility that did not have a permit to handle the waste;

Fourth, that the defendants knew the waste material had the potential to be harmful to others or to the environment, in other words, that it was not an innocuous substance like water;[3] and

Fifth, that the defendants knew that the facility to which the waste was transported did not have a permit to handle the waste material.

The government does not need to prove that the defendants knew that the waste was

---

[3] Courts have uniformly held that the government need only show that the defendant knew that the waste material had the potential or substantial potential to harmful to others or to the environment and was not an innocuous substance like water." *See*, *e.g.*, *United States v. Self*, 2 F.3d 1071, 1089-91 (10th Cir. 1993); *United States v. Goldsmith*, 978 F.2d 643, 645-46 (11th Cir. 1992) (per curiam); *United States v. Hoflin*, 880 F.2d 1033, 1039 (9th Cir. 1989).

8

listed or identified as hazardous waste in the EPA regulations.[4]  The government is not required to prove that the defendants knew that they were violating the Resource Conservation and Recovery Act (RCRA).

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

  *s/Dianna Collins*
DIANNA COLLINS #59641MO
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri    63102
(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2018, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties of record.

  *s/Dianna Collins*
DIANNA COLLINS #59641MO
Assistant United States Attorney

---

[4] RCRA offenses, including that in Section 6928(d)(1), are general intent crimes, in that the government is required to show knowledge of the facts that constitute the offense, not of the law. *See*, e.g., *United States v. Spatig*, 870 F.3d. 1079, 1082 (9th Cir. 2017) (A "knowing" RCRA violation for storage of hazardous waste "merely requires proof of knowledge of the facts that constitute the offense," quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)).